**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Komkrit Prapha-Phatana and Piammanus Prapha-Phatana, husband and wife, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Cooper Tire & Rubber Company, a Delaware corporation, et al., <br><br> Defendants. | No. 03-1089-PHX-ROS <br><br> **ORDER** |

Pending before the Court are a variety of motions filed by both parties. This Order resolves all pending motions and sets forth firm deadlines for the completion of the case.[1]

**I. Background and Procedural History**

In 2000, Plaintiff Komkrit Prapha-Phatana purchased from his brother a 1992 Plymouth van. At the time the van was purchased, it had been driven 92,000 miles. The tires were not new when the van was purchased and it is unclear how many miles the tires had been driven. On May 13, 2001, Plaintiffs Komkrit Prapha-Phatana, Piammanus Prapha-

---

[1] The Court did not set oral argument on the partial summary judgment motion because the parties submitted memoranda discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. See Mahon v. Credit Bur. of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999).

Phatana, Ajalawit Prapha-Phatana, Anyada Prapha-Phatana, and Prasan Thamkdrongart ("Plaintiffs") were traveling in the van in Maricopa County, Arizona. (Doc. 146) After a left rear tire disablement, the van left the road and rolled over. Piammanus Prapha-Phatana and Anyada Prapha-Phatana were ejected from the van during the accident. As a result of the accident, Komkrit Prapha-Phatana "sustained a head contusion, headache, neck pain, back pain and cuts and scrapes"; Anyada Prapha-Phatana "sustained a loss of consciousness, and abrasions on her face, heel, and legs"; Prasan Thamkdrongart "sustained a head laceration, low back pain, wrist injury, and hand and rib fractures"; and Piammanus Prapha-Phatana "sustained a head injury, fractures, and laceration." Ajalawit Prapha-Phatana "did not sustain any physical injuries." (Doc. 146 ¶¶ 17-21)

Plaintiffs brought suit in Arizona state court and the case was removed on June 5, 2003. (Doc. 1) The Court entered the first scheduling order on September 22, 2003. That Order set September 17, 2004 as the deadline for the completion of discovery. The parties experienced serious difficulties with meeting this, and other, deadlines. During the course of this case the Court has issued *six* amended scheduling orders. (Doc. 36, 55, 80, 90, 110, 121, 134) The deadline for discovery in the seventh amended scheduling order was May 31, 2006. (Doc. 134) At the time that order was entered, the parties were still having difficultly conducting discovery. In an attempt to facilitate completion of discovery, the Court appointed a Special Master to "address all discovery-related issues, disputes, and motions." (Doc. 149) The parties were afforded five days in which to file any objection to a Report and Recommendation issued by the Special Master. (Doc. 177)

A discovery dispute the Special Master addressed involved "special holds" Defendant Cooper Tire placed on certain tires.[2] Plaintiffs had asked Defendant whether any "special holds" had been placed on tires similar to the tire at issue. Defendant originally responded that no "special holds" existed but later admitted that it had been mistaken and "special

---

[2] A "special hold" is "an instruction to hold particular tires" that are returned to Defendant. (Reply Aug. 21 p.16) Holding the tires allows for, among other things, "inspection and analysis" by Defendant's engineers.

holds" did exist. The Special Master, through a designee, oversaw an audit of Defendant's records to determine if additional "special hold" documents existed that had not been produced during discovery. During the audit, the Special Master's designee "saw no evidence . . . that [Defendant] was intentionally withholding documents as they related to 'Special Holds.'" (Doc. 226) The Special Master later recommended that Defendant bear the entire cost of the designee and suggested that the Court determine whether Defendant should bear the entire cost of the Special Master. (Id.)

Now pending is a motion filed by Defendant seeking partial summary judgment on the issue of punitive damages. According to Defendant, there is insufficient evidence that it "was guided by an 'evil mind' or had 'evil motives' in designing or manufacturing the tire" at issue. (Doc. 142) Plaintiffs respond by arguing that Defendant "knew that its tires were defective" and knew that the defects "could result in injury to customers." (Doc. 233) Also pending are motions for sanctions, motions to strike, and a request to modify the Special Master's recommendations.

**II. Motion for Summary Judgment**

**A. Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co.,

1  Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless
2  there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely
3  colorable, or is not significantly probative, summary judgment may be granted." Anderson,
4  477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing
5  of the evidence, and the drawing of legitimate inferences from the facts are jury functions,
6  not those of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be
7  believed, and all justifiable inferences are to be drawn in [its] favor" at the summary
8  judgment stage. Id. Finally, Rule 56(e) contemplates the result of a party's failure to respond
9  adequately to a motion for summary judgment. If the non-moving party does not respond
10 by setting forth specific facts showing there is a genuine issue for trial, "summary judgment,
11 if appropriate, shall be entered against the [non-moving] party." Fed. R. Civ. P. 56(e).

### B. Applicable Law

Plaintiffs seek punitive damages based on a product liability claim. Such claims "are decided according to the law of the forum state." Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407 (9th Cir. 1992). The Court will look to Arizona law to determine the applicable law. According to Bates v. Superior Court, 749 P.2d 1367, 1370 (Ariz. 1988), a court must "resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question." In this case, the accident occurred in Arizona and neither party disputes that Arizona law should apply. The Court will apply Arizona law in addressing the punitive damages issue. Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989) ("[W]here state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law.").

### C. Analysis

In Arizona, "[t]o recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil mind.'" Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn, 907 P.2d 506, 518

1  (Ariz. Ct. App. 1995) (quoting Thompson v. Better-Bilt Aluminum Prod. Co., 832 P.2d 203,
2  209 (Ariz. 1992)).  "A defendant acts with the requisite evil mind when he intends to injure
3  or defraud, or deliberately interferes with the rights of others, 'consciously disregarding the
4  unjustifiable substantial risk of significant harm to them.'"  Id. (quoting Linthicum v.
5  Nationwide Life Ins. Co., 723 P.2d 675, 680 (Ariz. 1986)).  An evil mind may be inferred
6  but "there must be evidence of an 'evil mind' and aggravated and outrageous conduct" to
7  support an award of punitive damages.  Linthicum, 723 P.2d at 680; see also Hyatt Regency,
8  907 P.2d at 518 ("The plaintiff may meet the clear and convincing standard by either direct
9  or circumstantial evidence which persuades the jury of the high probability of the defendant's
10 evil mind."); Thompson, 832 P.2d at 210 ("A jury certainly may infer evil mind when a
11 defendant continues a course of conduct with knowledge of the past harm caused by that
12 conduct.").

13     When evaluating conduct regarding an evil mind, a court may look to a number of
14 factors, including "(1) the reprehensibility of defendant's conduct and the severity of the harm
15 likely to result, (2) any harm that has occurred, (3) the duration of the misconduct, (4) the
16 defendant's awareness of the harm or risk of harm, and (5) any concealment of it."  Hyatt
17 Regency, 907 P.2d at 518.  The case of Volz v. Coleman Company, Inc., 748 P.2d 1191
18 (Ariz. 1987), involving an allegedly defective product, is particularly instructive for
19 evaluating Defendant's actions in this case.

20     In Volz, a five-year-old had been severely burned when fuel sprayed from a Coleman
21 stove.  Id. at 1192.  The accident was due to the type of cap Coleman used on its stoves.  Id.
22 Internal documents showed that Coleman was aware fuel might be sprayed as a result of the
23 cap's design.  Id. at 1193.  Other internal documents were introduced showing "the defects
24 in the . . . cap and improvement that would be gained by redesigning the [cap]."  Id.  Also,
25 "[d]espite Coleman's knowledge of the possibility of fuel spraying . . . no warnings were
26 issued advising the user" of the danger of spraying fuel or how to avoid accidents.  Id. at
27 1194.  In determining that insufficient evidence existed to support an award of punitive
28 damages, the Volz court found that Coleman's actions evidenced "negligence, or even gross

- 5 -

1  negligence" but not the "'something more' than gross negligence required" by Arizona law.
2  Id. at 1195. Plaintiffs' evidence in this case would have to show conduct *more* egregious than
3  the conduct present in Volz to support their claim for punitive damages.

4  Plaintiffs present seven arguments in support of their request for punitive damages.
5  The seven arguments consist of five arguments directed at choices made in manufacturing
6  the subject tire, one argument directed at general quality control problems at Defendant's
7  manufacturing facilities, and one argument directed at Defendant's failure to turn over certain
8  documents during discovery. These arguments, and the evidence proffered by Plaintiffs in
9  support, do not create a genuine issue of material fact regarding Defendant's "evil mind."
10 The motion for partial summary judgment will be granted.

11 **1. Manufacturing Choices**

12 Plaintiffs cite the following manufacturing issues in support of their claim for punitive
13 damages: Defendant allowed insufficient undertread thickness; Defendant knew that
14 "inconsistent innerliner gauge" made tires "more vulnerable to oxidative degradation";
15 Defendant used "an antidegradant package that [it] acknowledged was insufficient";
16 Defendant knew that a "belt edge gumstrip" would prevent separations but failed to
17 incorporate one in all their tires; and Defendant knew that a "nylon overlay" should have
18 been incorporated into the tire's design. Plaintiffs' evidence submitted in support of these
19 arguments is not sufficient to support an award of punitive damages.

20 First, the parties agree that Defendant decreased the undertread thickness of certain
21 tires and that decrease lead to a slight increase in the tread separation rate. (PSOF Ex. 19)
22 The increase, however, was a fraction of one percentage point. Also, Plaintiffs' expert did
23 not measure the undertread of the subject tire nor was he confident that the undertread of the
24 tire was defective. (Reply pp.8-9) Second, Plaintiffs' evidence regarding an "inconsistent
25 innerliner gauge" is flawed in that their expert has not measured the innerliner gauge of the
26 subject tire and the evidence in support of their argument involves a manufacturing facility
27 different from the facility where the subject tire was made. (Reply Ex. 1 p.135) Third,
28 Plaintiffs have not produced any evidence establishing that the antidegradant package

1  Defendant used was insufficient. Plaintiffs' expert is not qualified to address this issue and
2  the documents cited by Plaintiff do not establish that the antidegradant package was
3  insufficient. Fourth, Plaintiffs support their argument regarding the necessity of a "belt edge
4  gumstrip" by citing a document from Defendant recommending that "belt edge gumstrips"
5  be incorporated into certain tire lines. This recommendation, however, was for tire types
6  different from the tire type at issue here. Plaintiffs did not present any other evidence
7  establishing that gumstrips were necessary and that Defendant consciously disregarded this
8  necessity. Fifth, Plaintiffs' argument regarding the necessity of a "nylon overlay" is not
9  supported by their own expert's testimony. In his deposition, Plaintiffs' expert stated that the
10 absence of a nylon overlay is not necessarily a defect and that 90% of comparable tires do
11 not have a nylon overlay.

12 All of these issues involve normal manufacturing choices a tire company must make.
13 These alleged problems may support Plaintiffs' product liability claims but they are not
14 sufficient evidence of Defendant's "evil mind" to support an award of punitive damages.

15 **2. Quality Control**

16 Plaintiffs also cite to the opinion of William "Doug" Eaton in support of their claim
17 for punitive damages. According to Mr. Eaton, Defendant sacrificed quality for quantity at
18 its manufacturing facilities. (Doc. 233 p.22) Mr. Eaton's opinions are based on his
19 experiences in Defendant's facilities, including statements he heard other individuals make.
20 Mr. Eaton allegedly took his concerns to Defendant's management but no changes were
21 made. Martin Mahan was also employed by Defendant and he allegedly heard "supervisors
22 specifically tell workers to use 'bad materials.'" (Doc. 233 p.24) Defendant's alleged failure
23 to address Mr. Eaton's concerns, as well as the conversations allegedly overheard by Mr.
24 Mahan, do not support an award of punitive damages. Plaintiffs did not provide any
25 evidence of serious problems with Defendant's quality control nor did they provide adequate
26 evidence linking the alleged problems with the tire at issue. Mr. Eaton's and Mr. Mahan's
27 testimony is insufficient to support an award of punitive damages.

28 **3. Discovery Issues**

1  Plaintiffs assert that the tire type at issue was subject to twenty-one different "special
2  hold" mandates. (Doc. 233 p.20)  The fact that a tire type was subject to "special holds" does
3  not mean that the tire type was defective; tires were subject to "special holds" for a variety
4  of reasons. (Reply Aug. 21 p.16)  Also, the fact of "special holds" tends to weigh against a
5  finding that Defendant acted with an "evil mind."  "Special holds" allowed Defendant to
6  investigate tire types and allowed engineers and chemists to determine how a tire type was
7  performing and decide if changes should be made.  If Defendant did not care if a tire type
8  was dangerously defective, it is *less* likely the tire type would have been subject to "special
9  holds."  The evidence of "special holds" does not support an award of punitive damages.

10  Plaintiffs have not presented sufficient evidence of Defendant's "evil mind" and the
11  motion for partial summary judgment will be granted.  Defendant's alternative arguments
12  regarding constitutional and statutory limits on punitive damages need not be addressed.
13  (Doc. 142 p.11)

14  **III.  Motion for Modification of Special Master's June 27, 2006 Recommendations**

15  In his June 27, 2006 Recommendation, the Special Master recommended that
16  Defendant bear the entire costs of the designee attending the discovery audit and that the
17  Court address whether Defendant should bear the entire cost of the Special Master.
18  Defendant agrees to bear the entire cost of the designee but objects to having to bear the
19  entire cost of the Special Master.  (Doc. 228)  Plaintiffs believe that Defendant should bear
20  all costs associated with the Special Master and that the Court should fashion an additional
21  "sanction remedy to punish [Defendant] and deter it from pursuing such similar conduct in
22  the future." (Doc. 230)

23  The Special Master found that Defendant's "method of maintaining records is sloppy
24  or, at best confusing" and Defendant's behavior during this litigation was cause for some
25  concern.  But the Special Master's designee saw no evidence that Defendant was
26  "intentionally withholding" documents.  (Doc. 226)  Defendant could have and should have
27  more promptly and accurately responded to discovery requests.  Absent convincing evidence
28  that Defendant's behavior was willful, however, the Court is unwilling to sanction Defendant

- 8 -

1 beyond requiring Defendant to pay the entire cost of the designee. The Court will adopt the
2 Special Master's recommendation that Defendant bear the entire cost of the designee but each
3 party remains responsible for one-half of the other expenses associated with the Special
4 Master. The Court will deny Plaintiffs' requests for additional sanctions. (Doc. 230, 236)

**IV. Motion to Strike**

In its motion for partial summary judgment, Defendant referenced a decision from the Arizona Superior Court. (Doc. 142) Plaintiffs request the Court strike any mention of that case as "it is not under appellate review, immaterial and impertinent to the issues herein and thereby unduly prejudices this court." (Doc. 231) Plaintiffs also suggest that citation of the case was a "breach of professional ethics." (Id.) Plaintiffs do not explain why Defendant's citation to an Arizona Superior Court decision should be stricken but their citations to other trial court decisions from other states (including one decision that was later reversed by the Mississippi Supreme Court) should be considered by the Court.[3] The Court will deny Plaintiffs' motion to strike.

Plaintiffs filed a twenty-nine page response to the motion for partial summary judgment. Local rule allows for only seventeen pages. Rules of Practice of the United States District Court for the District of Arizona 7.2(e). Plaintiffs did not file a request to exceed this page limitation. Defendant seeks to strike Plaintiffs' impermissibly long response or, in the alternative, permission to file a nineteen page reply. (Doc. 243) The request to file the lengthy reply will be granted.

Accordingly,

---

[3] Plaintiffs repeatedly cite to Judge Delaughter's decision in McGill, et al. v. Ford Motor Company. (Doc. 229 Ex. 1) That decision was reversed by the Mississippi Supreme Court. Cooper Tire & Rubber Co. v. McGill, 890 So. 2d 859 (Miss. 2004). Repeatedly citing a decision that has been reversed demonstrates that Plaintiffs' position was not chiseled with a fine surgical instrument, but of greater concern it is unprofessional. See Denise H. v. Ariz. Dept. of Econ. Sec., 972 P.2d 241, 244 (Ariz. Ct. App. 1998) ("The duty of candor requires that an attorney not make a false statement of fact or law to a court, offer false evidence, or fail to disclose a material fact or controlling legal authority.").

1 **IT IS ORDERED** Defendants' Motion for Partial Summary Judgment (Doc. 142) is **GRANTED**.

**IT IS FURTHER ORDERED** the Special Master's June 27, 2006 Recommendations (Doc. 226) are **ADOPTED IN PART**. Defendant Cooper Tire shall bear the entire cost of the Special Master's designee but the parties remain responsible for half of the other costs associated with the Special Master.

**IT IS FURTHER ORDERED** the Motion for Modification of the Special Master's June 27, 2006 Recommendations (Doc. 228) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiffs' Motions for Sanctions (Doc. 230, 236) are **DENIED**.

**IT IS FURTHER ORDERED** Plaintiffs' Motion to Strike (Doc. 231) is **DENIED**.

**IT IS FURTHER ORDERED** Defendants' Motion for Leave to File Response Memorandum (Doc. 232) is **GRANTED**. The Clerk shall file the document attached to Doc. 232 as Exhibit A.

**IT IS FURTHER ORDERED** Defendants' Motion for Leave to File Excess Pages and Motion to Strike (Doc. 243) is **GRANTED IN PART** and **DENIED IN PART**. Defendants are granted leave to file their reply but the motion to strike is denied. The Clerk shall file the reply lodged by Defendants.

**IT IS FURTHER ORDERED** the parties are to submit the Joint Proposed Pretrial Order, all Motions in Limine, Joint Statement of the Case, Joint Proposed Jury Instructions, and Questions for the Juror Questionnaire by October 20, 2006. No extension will be granted absent extraordinary circumstances.

**IT IS FURTHER ORDERED** the Final Pretrial Conference is set for November 22, 2006 at 1:30 p.m. The trial is set for December 12, 2006 at 9:00 a.m.

**IT IS FURTHER ORDERED** the parties may select and use a private mediator.

DATED this 19th day of September, 2006.

Roslyn O. Silver
United States District Judge